Mr. Feigenbaum. Thank you, Judge Jordan, and may it please the Court. We know you were court appointed as well, Mr. Feigenbaum, as with Mr. Encino. So, we truly appreciate your taking on the case. I know you've done it for many, many years, and we appreciate your service to your client and to the Court. It's a privilege, thank you. I remember many years ago, I had the honor and privilege of appearing before Judge Marcus when he was a district court judge, as he was well, Your Honor, Judge Jordan. And I'll never forget one thing you said. It's funny how things stick with you for the rest of your life when you hear something from somebody, and you always reminded us back in district court, Judge Marcus, to try to stay laser focused. And I never forgot that phrase, and at that time, laser wasn't really even that popular of a word. So, I've tried to guide my career by following that suggestion from Your Honor. But anyway, so with the idea of laser focus, I only want to bring up one issue in this trial argument, and that's the second warrantless search of the cell phone. Because the government's entire case at trial, which lasted not every day, but over the course of about five weeks, was all evidence that the government obtained from a warrantless search, a second search of the defendant Hernandez's cell phone. The first search... It wasn't all of the evidence, it was a large part, but it wasn't all because you had some of the alleged co-conspirators testifying about Mr. Hernandez's role, right? Correct, Your Honor, that is correct. However, though, it's in the record that from the case agents that the government's case was based on what was recovered from the warrantless second search of the cell phone. Anyway, what I would say about this, it's an issue that is not settled among the circuits. It's not... It hasn't reached the Supreme Court, of course. But what we have here, and what has to be separated out from the government's position is that there's two things going on with a search of a cell phone. The first thing is the search itself is the extraction or the taking out of the cell phone using extraction software, usually Cellebrite. That is the search, and that is found in the record testified to both by the original lead case agent, Spielvogel, and also by the primary government cellular expert, FBI Special Agent Soto. And those two gentlemen at trial, and here's the record references for their testimony. I sure would appreciate it if you would make note. For Spielvogel, it's at docket entry 242. Important part is pages 24 to 43. And for Soto, it's docket entry 243, pages 66 to 114. Now, once the search is completed according to a warrant, yes, the government does not have to analyze it or make other copies of what it took out in that warrant authorized search. They can do that at a later date, no problem. But what the government erroneously presents is that once the warrant period expires, the 14 days in most cases, in this particular case, the government says if we have new technology that comes along a year later, we can go ahead and search the phone again. But they can't. They can't because the search is the extraction. And again, both Spielvogel and Soto. Well, help me with the language. I'm sorry? Help me with the language in the rule that we're talking about. The 14-day limit only applies to on-site copying of the media or information and not to off-site copying of the information or review. So if they need to get new software to enable them to conduct a further review of that, as I read the rule and the advisory committee notes in some of the cases that have come out of some of the circumstances, other circuits, that that 14-day period doesn't limit them from a second effort at an extraction. Have I misunderstood that? Respectfully, Your Honor, I believe that is a view that is not the case law and it's not per the exact language of the rule because what, when you read the rule 41 carefully, what you're getting there is that within the warrant period, you can either seize the phone or make a copy, on-site copying, of the contents. Then the 14 days is over. You cannot search that phone anymore. And you do off-site copying later? Here's the rub. Copying of what you took out during the warrant authorized search, not make a copy, see, because what was taken out of the phone with a warrant is put in a box, let's say, and it's there for look at, looking at later, however you want to do it, analyzing it. But if after the warrant expires and you want to go back to the phone and do a new search, in other words, a new extraction, which is more comprehensive, you're not copying anymore what you took out in the warrant authorized search. Yeah, you can take that first search with a warrant. You can make all the copies you want, send it to all the analysts you want, do whatever you want with it. But if you have to go back after the warrant is over and take the device and make a new extraction, in other words, find stuff that wasn't there before, that requires... Help me with that. There are two cases in particular that I read that deal with the problem, at least generally. The first is a Sixth Circuit case, US v. Cleveland, where basically the Sixth Circuit blessed an extraction that took place entirely outside the 14-day deadline imposed by the warrant that was 907 F3rd of 423. And then in US v. Carrington, the Fourth Circuit approved an extraction that occurred several months after the initial search pursuant to the warrant, and they said that that was appropriate in light of the rule, we're talking about 41, looking at B, the language being the time for executing the warrant refers to the seizure or on-site copying of the media or information and not to any later off-site copying or review. But in those cases, if I had it right, they were talking about a subsequent extraction well beyond, say, that 14-day period, and they said the way they read the rule, given the nature of that search, it was perfectly consistent with the rule and with the reasonable requirements of the Fourth Amendment. Have I misread those cases or are they wrongly decided? Don't read them that way, Your Honor. Here's what I see in those cases with Cleveland and then Vadreen, which is an Eleventh Circuit case. Vadreen says, and Vadreen relies on Cleveland, Vadreen says in a nutshell, once data seized and extracted by law enforcement, the warrant is considered executed for Rule 41. Under an additional subdivision of Rule 41, Leo's law enforcement may analyze the data at a later date. I don't think you'll find one case, Your Honor, in any of the circuits where once there's a warrant that was executed and an extraction was made, even though down the road it's looked at and analyzed, you're not going to find one that allowed a new extraction without a warrant. Let me ask just one. Go ahead. Go ahead. Follow up. Final follow up question from me. Even assuming that you were right, that there was a technical violation of Rule 41, wouldn't this be a classic case where the good faith exception would apply? Does not apply. Why wouldn't it apply in this case, even if there was an error here? Wouldn't the police officers have had a reasonable basis, or the FBI agents, a reasonable basis to go in for the second extraction based on the reading of the rule itself? No, they wouldn't, Your Honor. If you look at the testimony of those two portions of the trial, both for Spielvogel, the case agent, and for the FBI main cellular analyst, you'll see that they both knew. They both knew that they were not allowed to conduct another extraction without a warrant 13 months later. They were not allowed to do it. And again, the- That's in his testimony of the agent. Yes. Yes. In fact, I mean, I could, I'll probably look for it. I think I'm- No, that's all right. But we'll find in the record of the hearing the agent's testimony to the effect that he knew and thought he was obliged to get a second warrant for a second extraction later. Yes. He says something to the effect Soto does. FBI analyst Soto says, every time you conduct a new search, you need a new warrant. And that's different. The search of a cell phone is the extraction of the information in there. That's the search. That's different than what you copied before. But two years later, you want to look at what you copied before with a warrant that authorized it. Two years later, you can look at it, reanalyze it, and do whatever you want with it. But a search is a search. And a house, you can't go back to a house 13 months later and say, I want to search your house again without a warrant because I got a new device that I can put against the wall and find something. Why isn't copying, for purposes of Rule 31, the same thing as extraction? Because when you pull out the information according to a search within the warrant period, you get a, like a box filled with stuff, okay? You can do whatever you want with it, down the road, whatever you want. But if you want to go back to that phone and you want to use a different search method. No, no, I know the argument. And I understand your argument. But when you extract, aren't you copying? No, I mean, you're copying what the extraction software allows you to do. But you're not copying everything that's in there that you didn't have the technology at that time to get. So you have to go back to the device with something new and make a new copy. That's more ample. And in my briefing, you're going to see it was, like, an unbelievable amount of new stuff. For example, WhatsApp, when they did the original search, warrant-authorized search, in February of 2020, Celebrite was unable to locate and pull out WhatsApp messaging. Most of the case, and you'll see in the briefing, most of the case that was brought against Hernandez was based on WhatsApp messages that were never discovered in a search 13 months before. And it would have been so easy for the government just to go to a magistrate and say, Look, we have new technology. It's 13 months later. Give us a new warrant. We're going to go in and search it again. And that's what the case law says is the search. Okay, Mr. Feigenbaum, you've saved. I'll give you, you had originally asked for 10. We've taken you over. So I'll give you seven minutes for rebuttal when you get back up. Appreciate the time. Okay, thank you. Sir Rosenfeld. May it please the court, Daniel Rosenfeld for the United States. This court should affirm the conviction and sentence for Javier Hernandez. And I want to start with the good faith exception. So there's two independent grounds supporting the denial of the motion. Was there a violation of Rule 41 that requires you to get to good faith? There was not. Excuse me, Judge. There was no violation of Rule 41. It would be helpful for me if you told me sort of right off the bat why Mr. Feigenbaum is wrong and that you didn't need a second warrant for the second extraction, which occurs more than a year later. So Rule 41, just like Your Honor's question to him implied, applies to copying. And when an extraction is a copy, in this case, it was a partial copy the first time, and they were able to make a further copy. That doesn't quite fit. It's not the same thing. It's not the same copy. Well, it's still a copy of the phone. It's a new copy. Sure, but the rule – A copy you didn't have before. Sure, but the rule applies to – the rule does not include in the time limit the time for off-site copying. So that's what this was, off-site copying. That's not included in the 14-day rule. Within the 14 days, law enforcement got the phone, wherever it was, and took it to the FBI lab. So under your view of Rule 41, you can get a warrant on January 1st of 2026 to go into a phone and extract its contents, right? Yes. And let's say you have a murder investigation without a statute of limitations, and you can sit on that warrant for 40 years and then extract without a new warrant. Yes, Judge. And you don't see that as problematic? So no, I don't, and so that's for two reasons. So the first is that happens sometimes all the time, sometimes quite a bit because it takes law enforcement technology, time to be able to, say, brute force a phone, crack a phone. There's testimony in this record that law enforcement has limited ability, limited resources, so phones wait in line. This phone was sort of towards the back of the line due to the nature of the crime. And further, when you think about the interest at play, the property interest here— Why not just ask the magistrate judge to give you more time to go into the phone? Because we didn't need to. You did need to because you ended up doing it. You had to go back to the phone a second time? Yes, yes. We didn't need to go back to the magistrate judge because we had a valid warrant. No, but why not ask the magistrate judge if you're talking about this backlog of phones and you can't get to them? Why not just ask the magistrate judge to give you a longer lead-in period to do your extraction? Because the 14-day limit only refers to the on—the rule says it refers to the on-site copying. So when you go into someone's property, you have 14 days to go into the property and take the stuff. But once you take the stuff, you're no longer interfering with their—to their house for instance. If you don't take anything from the phone in the first 14 days, can you then take something out of the phone after the 14 days? Yes, Judge. So the 14-day period is meaningless. It's not, Judge. You get a warrant, and the warrant says 14 days, and then you don't take anything in 14 days, and you wait five years, and then you go in. And you say that's perfectly OK. Under Rule 41 as currently construed, yes. Why is it OK under the Fourth Amendment of the United States Constitution? The obligation is, whether it's the search of a home or the search of an office or the search of a phone, it's got to be reasonable. That's the touchstone. So let's go back to Judge Jordan's question under the framework of the Fourth Amendment. Why would it be reasonable to sit on it for an extended period of time when you could have gone in earlier, maybe even during the timely period, and yet you sit on it for other reasons and wait and wait, and then some cop says, well, but let's go into it a year or two or three or five years later. Why would that be reasonable under the Fourth Amendment? So this is the case that we cited in our brief, and I did file a 28-J letter on Nicholson. And Nicholson says the Fourth Amendment does not speak to time limits. The key question for the Fourth Amendment analysis is has probable cause dissipated? And I think the way – I think sort of the backstop your honors are hoping for would be a Rule 41G motion. So in other words, if law enforcement gets a warrant and seizes a phone, they say, judge, we think there's probable cause. There's evidence of a crime on this phone. They take the phone, and then once the phone's in law enforcement custody, there's no – all the cases say probable cause is not going to dissipate. So the key language is dissipate. And so here the phone has not been altered while it's in law enforcement custody. And so then if the owner of the phone says, oh, you guys are violating my possessor interest. I want my property back. They file a Rule 41G motion and say, give me my property back. The government's never going to give that back because the phone – in and of itself, the phone has evidentiary value even absent the extraction. That's what you're going to tell the district court. Don't give this phone back because we're going to use the phone. And even when – even without the extraction, we were able to get some information out of it because it was unlocked at the time that we got it. And we want to use pieces of evidence one, two, and three that we didn't need to extract. Don't give him back his phone. We're going to use it at trial. And if you give it back to him, he's going to throw it away. And then we're not going to have that piece of evidence. He'll never get the phone back. Well, but then there's a neutral, impartial magistrate judge or district court judge who's going to be ruling on that motion and deciding whether or not that's evidence. And if the testimony – if the testimony at the hearing, like in a hypothetical, is we haven't even looked at the phone, then I can imagine a district court judge or magistrate judge saying, well, if you haven't even looked at it, how do you know it's evidence? Let me ask you two questions on this issue of the warrant before you get to the good faith exception. I know you wanted to get there right at the outset, so just bear with me for a sec. First question, the warrant that you got from Magistrate Judge Torres said that you were commanded to execute this warrant on or before 3-10-2020. There was no limit, I take it, in the warrant for when you would have to extract the information. Correct, Judge. So it was unlimited at least in terms of the warrant issued by the magistrate judge. Yes, Judge. That's correct. Second, the two cases that we talked about, the Cleveland case and the Fourth Circuit case, are those directly on point or do we have a difference between extraction and copying? Are they factually and procedurally on all fours with this or are they factually slightly different even if you say the reasoning applies? So I don't have the facts of both cases directly in front of me, Judge. I apologize. I do think that the reasoning certainly applies, but I'm not – No, that's clear. Yes. I'm just trying to find out whether you agree with Mr. Feigenbaum that there's a difference between what happened in those cases and what you're asking us to say and find in this case. The difference in hearing and the difference between something called an extraction and something called a copying when it comes to a cell phone. No, I don't think there's a distinction there because an extraction is a copy. Is it a complete copy? Is it a partial copy? When you extract something, you are creating a machine-readable copy of what is on the phone. All right. Help us with the good faith exception. So the first point is Judge Bloom made an explicit good faith finding that the defendant does not challenge on appeal. So even if Your Honors were to agree that this did violate the Fourth Amendment because this was an improper search, the defendant never challenges. Help me – just help me for this court. If we were to go to good faith, do we first have to answer the question of whether it presumptively violated Rule 41? No, Judge. You can assume without deciding. All right. Thank you. So one other fact that I want – just talking about what it means to extract a phone. I didn't mean to cut you off from the good faith argument. Okay, yes. So the first point is the defendant never engages with the fact that this was a good faith finding, so that's an independent basis that is unchallenged to affirm the judgment below. If Your Honors were to get to the good faith, I disagree with Mr. Feigenbaum as to what the record shows. We think that the agent's field vocal testified he thought this was the continuation of the same search, so we think he justifiably relied on this warrants. And whether or not FBI CART examiner Soto was asked a legal question about what a search is or the defense expert about what a search is, those are legal conclusions, so those are not binding on the United States or on this court as to what a search is. What did they say anyways when they were asked about whether or not they needed a further judicial warrant to do the second extraction? I believe Soto – so I believe Soto was speaking in a hypothetical about, oh, if you're doing a new search, do you need a second warrant? I think he said yes, but that doesn't answer the question of was this a new search. And our position as a legal matter was it wasn't, and as to the good faith point, agent's field vocal, who was the one who did the search, didn't think it was. How can it not be a new search when you're going in to get stuff you didn't get the first time? So imagine a DNA search warrant where you get the swabs, and then you want to run a new test on the DNA because new information, something like that. We don't think that's a new search. Law enforcement already had this property. It was in property. They can look at it. They can manipulate it. They can do whatever they want, a jacket or a safe or any sort of thing. Once you've seized it, you have it. You can then – Not the same for a home though, right? Not the same for a home, and the critical distinction there is you give the home back. Here, and that's why I was getting out of Nicholson, has probable cause dissipated. And if you seize something that's in law enforcement custody, probable cause has not dissipated. Whereas a home, you give it back, and then you absolutely would need a new warrant if you want to go back. Yeah, but probable cause doesn't mean you get to search. Probable cause often leads you to get a warrant. Only in some cases does probable cause let you search without a warrant. Yes, so here they did get a warrant. And the question was, did the probable cause for that warrant dissipate over the year the phone was in law enforcement custody? I want to go to the difference between the extraction and copying because Rule 41 actually doesn't talk about extraction. It talks about copying. I just want to make sure I understand your argument. So you go in the first time. You have some software technology. It goes in the phone, and it pulls out whatever it pulls out. And are you saying that then you have better software technology so it goes in and it can pull out more? Is that all you're saying? Yes. Okay, and so the first copying is kind of like I have an old-timey Xerox that doesn't do very much. It's not color. It's not this. It's not that. And it gives me something. And you're trying to buy knowledge. Again, I'm just trying to understand it. But you're saying when we go back again, it's still copying. We call it extraction. But you say it's still copying. We just got a lot more power to our software. Is it, again, software extraction? Yes, Judge. It's just instead of Cellebrite, what is it? What do you call the second extraction? I believe it was a new version of Cellebrite. Okay, so it's the same company. It's just more powerful and it pulled up WhatsApp. Because WhatsApp, it kind of is international. I mean, whenever I travel, I've got to use WhatsApp. I can't use Gmail or whatever. You've got to use WhatsApp. And you're just saying the first type just didn't pull up WhatsApp. Yes, Judge, and the agents knew that. And they actually manually went in the phone and took pictures of all the WhatsApp screens. To begin with. To begin with. And so we already had the WhatsApp messages. Right. But it just was not in a very user-friendly format. And so then we would, oh, well, we'd like to. And so what changed between the first technology and the second technology? Do you have any – well, maybe does the record tell us anything about that? Or it's just we had new technology that was more powerful that would pull out more? Somebody says it extracts more. It's a new seizure. You say, no, it's just a second copying with a more powerful technology. Yes, that's what I say. I don't know what the answer is, but I'm just trying to understand the argument. Then can you tell me what is the two cases you want me to look at to support your theory in that regard? What are your two best cases? So it's both cited in our brief, United States versus Castro. I assume you cited them. Yes. There's a lot of cases cited. Yes. What do you want me to go read? United States versus Castro, and that's at 880. You don't need – I can find it. And the other one is? United States versus Evers. E-V-E-R-S? Yes, ma'am. Thank you. And so both cases stand for the proposition that you can go back in over and over again as long as you don't exceed the scope of the probable cause in Attachment A or in Attachment B, which I don't think there's any allegation here that a neutral magistrate judge signed a warrant saying there's probable cause in this phone for these crimes, and there's no allegation that at any point the FBI agents exceed the scope. What would you say is the worst case against you that's addressed this issue and kind of rejected this? I mean, because we need to look at it. What's the worst case or the best case for the defendant? I know you don't want to answer that, but I'll figure it out. What's the best case for the defendant? You're an officer of the court. You've got to represent the defendant. What's his best case? I'm going to read them all, so you might as well tell me. I'm honestly not sure. I don't think there is a case that supports him. I think he's got an argument sort of from, I think, persuasive value. What's his best persuasive value case? What is the case he cites the most for his proposition? I'll just ask him. Never mind. Thank you very much. That's fair. She's letting you off easy. Judge Choflat once asked me not that question, but to make the argument for the opponent. So that's a tough one to scramble out of. So I see my time has elapsed. The court has no further questions. We'd ask the court affirm the judgment below. All right. Thank you very much. Thank you. May it please the court again. Judge Hull, I listened carefully to your interchange with the government's attorney. So one thing before I forget is that you were using an example, Judge Hull, with the other attorney just now, where he was painting the picture as the government acquiring a newer technology from Cellebrite. It was called Premium at that time. Cellebrite Premium. It didn't exist 13 months before when they did the first search, pursuant to a warrant. And Your Honor was talking about, well, it's like maybe getting a better copier or … I don't know whether it is or not. I was just trying to make sure I understood. That's his theory. I think that's his theory. Right. I don't know what the answer is. So if you tell me your best case I should look at.  It's an 11th Circuit case. Vadreen. Yeah. It's in my reply brief for sure. All right. Because the government used it, and I said, this actually is the best case for me. All right. And it's grounded in the Sixth Circuit case of Cleveland and so forth. So, yes, we like Vadreen. And so when you're making that second search, they did it without a warrant on the phone. What the government was doing, they were not going to the copy they originally made, which was now stored in their computers, what was stored in the government's computers. I think they agree with that. They didn't go use that. They went back into the phone, ab initio, one more time, and ran a program. Yes, ma'am. Okay. But what I understood was to me, maybe I misunderstood him, it sounded like they could just go to the first warrant authorized copy, run the new software on that copy, and get this additional stuff. I think they went to the phone again. Yes, ma'am. I don't think there's any question they went to the device again. Thank you. Mm-hmm. Now, he also, the government attorney, was talking about, it's like when you have a phone, and you have a warrant period of 14 days, and the analysts, the cellular people, they have trouble cracking the code, like to break into the phone or something. Yes, that's a legitimate excuse why the time limitations of the warrant can be extended, because it's not through any fault of the government that they couldn't break into the phone. They needed to send it maybe to another laboratory, which was more sophisticated. Maybe they were backed up on time. All that stuff is okay. I'm not arguing against that. But none of those things existed in this particular case. In this case, the government got the warrant February something of 2020, and by February 27th of 2020, the government was able to get into the phone and make its search, its extraction, its copy of what they were able to do. Is there a difference between copying and extraction, or are those words interchangeable in your view? They're interchangeable when you're talking about taking stuff out of the device. Right. Yes. But later on, when you talk about off-site copying, that off-site copying relates to the copy that was made pursuant to warrant. They're trying to say what I gathered from their briefing was the government's – I understand it, just to cut to the chase. Yes. Within the time warrant of 14 days, they had some software. They went in. They got some stuff and pulled it out. Whether you call that extraction or copying, they did that within 14 days. And then they got some new software, and a year later they used the new software. They went in and, again, pulled some stuff out. Do I have that essentially? Is that factually correct? Yes. With the second pulling out, the second time, no warrant. Okay. The question is whether they needed an additional warrant to do the same thing 13 months later without a warrant. So we're using the same language, extraction, copying, both instances pulling out, one within 14 days, one without, right? Correct. Okay. Now, help me with the rule. This is the problem that I have with the argument. The rule itself says the time for executing the warrant in 41E2A and F1A, that's where it says you got 14 days to execute the warrant. The time for executing the warrant, the 14 days, refers to the seizure or on-site copying of the media or information, comma, and not to any later off-site copying. And it doesn't end there. It says any off-site copying or review. I take that to mean that more than 14 days later you can go back, if you had new software, and do the same thing again. Have I misread and not to any later off-site copying or review? Respectfully, yes, Your Honor. Okay. Tell me why. Because it would be a nullity. It would make no sense to have any limitation, a 14-day limitation. Well, I think there's a Fourth Amendment reasonableness limitation superimposed on anything that Rule 41 says. So I'd be deeply troubled if they came back 20 years later and did it. I think the argument would not so much be pegged to 41 as it would be to the Fourth Amendment. That wouldn't strike me as reasonable in the absence of some pretty compelling kinds of explanations. But if they get new software six months or a year later, isn't that covered by the rule, any later off-site copying or review? I do not read it that way. It's a new search, according to the case agent, Spielvogel, and the government expert. Let me read this to you, Your Honor, for the record. Trial date number four, docket entry 242 at page 28. Spielvogel is testifying. He was the original case agent. I asked the question, me, I asked the question, do you believe that the first search warrant had an end date where you could not search the phone anymore? Answer, at line 22, correct. The lead case agent is saying, correct. There's an end date that you couldn't search the phone anymore. What we were doing was that we considered a continuance of the same search. So like he's saying, I can't search the phone anymore. So he would agree with you that I've misread the language of Rule 41? Yes, he tried to wiggle out of it, but he did agree with me. Let me ask the question this way. If I read it that way, and I think that's a pretty good argument, a man coming from Mars looking down and says it doesn't apply to any later off-site copying or review, that that means they can do it again at some reasonable period thereafter without going back for a second shot at the apple with a magistrate's warrant, why wouldn't a reasonable objective officer be able to read it the same way? And if that is indeed the case, how could this not be a good faith exception? Well, Your Honor, Soto, the forensic analyst FBI agent, said that you need a new search warrant if you're going to conduct another extraction. So he's a guy who's got, you know, But I'm asking the question, could not an objectively reasonable, well-trained officer have thought reading the same rule I read to you twice, concluded that he could do a second extraction with new software outside the 14-day period? Not when he's asked the question. Do you believe the search warrant? I didn't ask what he said. I asked whether an objectively, reasonably trained FBI agent couldn't come to the same conclusion that I just came to, or at least suggested might be a reasonable possibility. Couldn't a reasonable officer look at this rule and say, I think I could do it a second time with new software within some reasonably bounded period of time? Your colleague says there's no reasonable application at all. I think that's just wrong. He could think that, Your Honor, but that's not what the case law says. Okay. Real quickly, maybe one minute if I had. So Nicholson was the case that the government sent in as supplemental authority. Then I sent in a reply. That case had already been briefed by the government in its answer brief, and I had responded to it in my reply brief. And so that's part of the record, too. It's just, you know, they sent their thing last Friday. They re-sent it again Monday or something, and I had my response in. So I deal with Nicholson. It just doesn't apply. Now, last thing. Manually took photos. The government's giving the impression that they presented a trial. They could have, instead of using the warrantless evidence that was recovered, they already had taken photographs of things on WhatsApp and stuff like that, just looking at the phone. The government never proved any of that. First of all, they never went to trial and said, Judge, in an abundance of caution, we are going to only seek admission of the evidence that was pursuant to warrant. We're not going to, and then she would say, well, give me an exhibit list that will deal with those exhibits that were taken photographically. It's all in the briefing, so you don't have to write anything down. But in the briefing I also mentioned that there's all these phone conversations that were recovered on WhatsApp, the warrantless search, recovered all these phone conversations. They're throughout the briefing. You're going to see it. And even the other case agent who took over from Spielvogel, Francisco, he said his testimony was basically just everything from the second warrantless search. Were you the trial counsel? Yes, Your Honor. When they took all the screenshots before they could extract again, did they get anything in the second extraction that wasn't already in the screenshots? They said they took screenshots of all this WhatsApp stuff. They did not take screenshots of everything that was in WhatsApp. You claim there was some new stuff in the second extraction. Hundreds, if not thousands. Okay, you answered my question. Thank you. I thought that was the case, but I just want to make sure. Thank you very much for the additional time. All right. Thank you both very much.